Based on a 14-year-old Kansas misdemeanor conviction for domestic violence, Mr. Jackson was charged in the Western District under 922 G-9 for illegally possessing a firearm because he had this old misdemeanor conviction in Kansas that the record indicates didn't even involve a firearm. And it's our position, Your Honors, that notwithstanding the Rahimi decision that came down from the Supreme Court this last term construing 922 G-8, where somebody is barred from having a firearm because they're under a victim protective order, that that does not translate into showing that the government can shoulder its burden of proof. Counsel, are you making a facial challenge or an as-applied challenge? I think it's both, Your Honor. It's a facial challenge and impliedly, impliedly, I think, in our brief we've raised an as-applied challenge noting that this is a 14-year-old misdemeanor conviction that doesn't even involve a firearm. Is that how the District Court understood it? I mean, the District Court resolved this purely as a facial challenge. And where I'm a little stuck is how that doesn't, how you can have a facial argument after Rahimi. I think we can have a facial argument challenging 922 G-9 after Rahimi because you're dealing with apples and oranges, really. 922 G-8 applies to an individual who is an imminent, current threat to somebody else against whom a victim protective order has been taken out. He's gotten the procedural protections that go along with that and he's found to be an immediate, current threat. Now, that's quite a bit different from 922 G-9 because under 922 G-9, what you have in effect is a lifetime ban for the possession of a firearm for anybody who has ever been convicted for a domestic violence misdemeanor regardless of how old it is and regardless of whether or not the prior incident in this case, which was 14 years old, even involved a firearm. Is it a lifetime ban? The government seems to suggest that it's not. It's a lifetime ban in effect because they talk about, well, you can get it expunged or you can get pardoned or some kind of extraordinary remedy to displace the misdemeanor conviction. In effect, it's a lifetime ban. You can say the same thing for felons in possession of a firearm. Well, maybe a guy who's a felon in possession of a firearm can get his conviction expunged somehow or get it reversed on appeal or get a governor's pardon or something of that nature. It's in effect a lifetime ban absent extraordinary circumstances just as it would be for somebody who is a felon in possession of a firearm. I think one of the interesting things here is that in the district court, the government argued that 922 G-9 was analogous to the old surety statutes, the going arm statutes, the raised statutes, and things of that nature. The district court did not rule on any of that. The district court didn't adopt any of those arguments. The district court relied on Heller, right? Yes, the dicta and Heller, that it's analogous according to the district court to somebody who's been convicted of being a felon in possession of a firearm. How does the district court's reliance on the Heller dicta change after Rahimi? I think it changes, Your Honor, because being a felon in possession of a firearm is an entirely different category, as we argued in our briefs, than being a misdemeanant. Does that distinction hold in the domestic violence context, given what we have said and the Supreme Court has said about folks who engage in domestic violence? Why is that? Because it's a category error. Now, they're analogous to the extent that they're both categories of crime. One's a felony, one's a misdemeanor. But to say that being a felon in possession of a firearm is analogous to being a misdemeanant who is barred from firearm possession just doesn't hold water. It was never suggested by Heller or any subsequent case construing Heller that misdemeanants can be barred under the historical traditions of firearm regulations stemming from the Second Amendment. That was never said in the Heller dicta. It was never said in the McDonald case that went up from Illinois. So we think it's not analogous at all. It just isn't analogous. One is a felony, one is a misdemeanor. They're both crimes, of course, but that just paints with too broad a brush, we believe. And the other distinction here is that, well, the government on appeal abandoned initially arguments that 922G9 was analogous to the old surety statutes and the going arm statutes and the appraise statutes. They abandoned all that, that they argued in the district court. The district court didn't rely on any of that. Now, granted, the district court said toward the end of its order, okay, I'm denying the motion to dismiss on constitutional grounds. You preserved your record for any further appeal, but we're going to have to wait to see what higher courts do as Bruin is construed in other cases. And the reason that Rahimi doesn't apply here, I don't think, your honors, and the logic of Rahimi, which did rely and reference old surety statutes and things of that nature, is that the surety statutes, appraise statutes, going arm statutes did not work a lifetime ban on firearm possession. In fact, they didn't really work a ban on possessing a firearm so long as you put up a bond or so long as certain other conditions were met. But Rahimi says that the surety and going armed laws confirm what common sense suggests. When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed. So how does that not apply squarely here? A clear threat, meaning a current threat, that's how I would interpret it. A current immediate threat. And somebody who's under a victim protective order, as we indicated earlier, is a current immediate threat to somebody and has been found to be such by a court after certain procedural protections were afforded to the accused on the protective order case. But those statutes, those old statutes, you could still go around armed if you put up a bond. Here, it's in effect a lifetime ban for being convicted of a misdemeanor over a decade in the past, as was clear in this case. So that's the reason, Your Honor, we don't believe that those surety statutes and the like, which the government now relies on based on Rahimi, apply in this context. One is a temporary ban. One is a lifetime ban. One deals with an immediate and current threat to other people. One is based on an old, old conviction that may or may not show that somebody is a current clear threat. There was no showing that because of this 14-year-old misdemeanor domestic violence conviction out of Kansas, that Mr. Jackson was a clear and present threat or a clear and present danger to anybody. What authority can you point us to that suggests how old that prior is, informs our analysis under, after Rahimi? No specific authority, Your Honor. Just the fact that it is a significant difference between an old conviction for domestic violence misdemeanor and, yet again, somebody who poses a current threat, as has been found by a judge who issues a protective order. Well, how do we factor in or do we factor in the fact that he appears to be a current threat based on the conviction in this case? In this particular case, I guess you could say that he's a current threat because he was convicted on a guilty plea for possessing a firearm due to a misdemeanor conviction. But to say that the fact that he had the old misdemeanor conviction makes him a current threat, I think, is the burden at any point. You don't think a person who engages in road rage with a gun and then stashes the gun in a child's backpack and then is subsequently discovered that there are three other guns, a total of five guns, with two, what, 36-round magazines, that person's not a current threat? Based on looking at it on that prism or through that prism, yes, I think that argument could be made. But the point I'm trying to make, not very successfully apparently, is that when you're talking about a current threat, you're talking about, in the instance of a protective order, somebody who's been demonstrated as that based on past conduct versus an old misdemeanor conviction. Then you may need to also correct me on the record. My understanding of the record is that there were two misdemeanor convictions. That's correct. He had a misdemeanor conviction out of Tulsa County in a domestic violence case, but that was not the predicate upon which the federal charge was based. They simply charged him under 922 G9 because he had the old 14-year-old domestic violence misdemeanor conviction in Kansas. The case in Tulsa County for which he got a deferred sentence was not part of the charging document. It was not in the indictment. It was not in the indictment. He did not plead guilty based on the Tulsa County case. Was it referenced in the sentencing proceedings? Was it referenced in the sentencing proceedings? I don't believe so, Your Honor. I don't believe so. I'll point out one other thing. The case of NRA United States, Judge Murphy, you issued a dissenting opinion in that case. It was a 2009 case that preceded Bruin. However, in your dissent, Judge Murphy, you indicated that you didn't think 922 G9 was historically a proper basis for the ban. This was before Bruin, but your dissent presupposed or foreshadowed the reasoning in Bruin. So you allow for the fact that that dissenter became educated by Bruin? Well, that's entirely possible, Your Honor. But I still think that the court's logic or your logic in that dissenting opinion is clearly applicable here, and it tracks the Bruin analysis. And there's just not a historical analog that is close enough that would ban somebody for life from having a firearm because of an old decade and a half misdemeanor domestic violence conviction period. You can say, well, felony misdemeanor, old statute versus new statute. There's nothing analogous, nothing analogous. So we would request, Your Honor, very respectfully that the judgment in this case be reversed. And if there are no further questions, I'd like to reserve the remainder of my time. Thank you, Your Honor. Mr. Krieger. Good morning, and may it please the Court. Stephen Krieger on behalf of the United States. The district court properly denied Mr. Jackson's motion to dismiss the indictment that was filed pre-trial and properly concluded that 18 U.S.C. section 922G9 is facially constitutional. How did the district court's analysis comport with Rahimi? Because it seems that it didn't at all. So, Your Honor, I will admit it's not the option I would have chosen if I had been in some additional arguments on appeal to support that. I mean, why shouldn't we just send the case back to the district court and give this very experienced district court judge an opportunity to decide the case under the applicable Supreme Court precedent? The reason why I would say that you don't need to do that is this case is currently before this court on de novo review. So even while I would admit the explanation of a judge of the district court may provide additional guidance or an additional source for this court, the matter is currently present before this court. And this isn't a matter of it's before this court in the first instance. It's not a matter of it's before the court on a deferential standard of review. It's before the court de novo. And so at the end of the day, there's nothing really to be gained by sending it back just to come back and file the exact same pleadings, except more massaged with Rahimi. Let me ask you this. Under Morales-Lopez, do we have the discretion to determine this on a facial challenge? Because on the face of the statute, with the indictment and the conviction, is it he's clearly subject to the statute. Correct. Can we do that? Can you consider it based on a facial challenge? Yes, your honor. A facial challenge? Yes, your honor. Okay. Is that what you want us to do? Yes, your honor. Okay. But there's also an as-applied challenge here, right? I don't believe so, your honor. Mr. Jackson never argued the district court erred by a facial challenge. Classifying this as a facial challenge. So the only order before this court for review, the only thing that was preserved through a pretrial motion to dismiss, was a facial challenge to the statute. If this court were to consider essentially a buried as-applied challenge, because that issue wasn't brought before the district court, especially because there was no motion to dismiss file after... Did you make an argument that the defendant was limited to his facial challenge? Because you can waive that, can't you? Your honor, we argued very specifically that this court was reviewing a facial challenge. We based that on the district court's statement, I think at least twice in its order, that all that Mr. Jackson was raising was a facial challenge. Did you take that position in the district court? Did you take the position in the district court that what was, excuse me, before the court was only a facial challenge? I don't believe we did, your honor. So have you waived the argument that he can't bring an as-applied challenge? No, your honor. Initially, I would say we would not have waived the argument even by failing to raise it because waiver requires an intentional relinquishment of a known right. We did not specifically say we're waiving the right or we're waiving the ability to say this is only limited to a facial challenge. More importantly, this court ultimately would not be bound by such a concession. This court also is honestly reviewing the district court's order that says it's a facial challenge. Mr. Jackson would have had the opportunity either through a motion to reconsider or through filing a motion to dismiss at the appropriate time, which would have been after either a adjudication by a jury to file an as-applied challenge. As the district court explained in Pope, a pretrial as-applied Second Amendment challenge is generally not available. That's because the facts of the case are to be developed through a trial. On remand of Romini in the Fifth Circuit, there was one concurring opinion indicated that Romini foreclosed a facial challenge. Did the two other judges buy into that? I honestly am not certain, Your Honor. I do not remember what the Fifth Circuit opinion on Romini on remand specifically says. I would not be surprised. Given the Fifth Circuit's view of the Second Amendment, there was at least some disagreement in that an as-applied challenge would be available. But that's pure speculation on my part. I'm sure I have read, essentially, Rahimi 2 or Rahimi 3, however one might say that the remand opinion on Rahimi. The reason why I ask is that there's a Sixth Circuit case, Gales, which indicates you can do a facial challenge after Romini. But if the two other judges, unless the two other judges did not buy into that argument of the concurring opinion, unless they did not, if they did, then there would be a circuit split if we said you can do a facial challenge, that we will recognize a facial challenge. That's why I'm asking the question.  Broadly speaking, if I can speak broadly to 922G as a whole, because I believe Gales is the only court that's addressed 922G9 specifically. But as a whole, there already is a circuit split regarding whether as-applied challenges in Second Amendment cases are available. The Eighth Circuit, I believe Jackson has taken the position that at least as far as felony convictions are concerned, as-applied challenges are not available. The majority of other circuits, I believe, have concluded at least to some extent there would be as-applied challenges available. All right, thank you. On a facial challenge, or to the extent that this court is only reviewing a facial challenge, that wipes away many of the arguments that Mr. Jackson's attorney made just moments ago. The fact that sometimes a conviction or predicate for 922G9 might make the disarmament indefinite or permanent does not make that so in every case. In fact, the Supreme Court in Rahimi noted that there are instances where there might be a 40-year long or an indefinite restraining order. And the court said that did not foreclose concluding that the statute is facially constitutional. And that's because the government's burden, at least to the extent that we get past the first step in ruin, the government's burden is to show that the statute is constitutional in some cases. And as the government explained, section 921A33C provides that in certain instances, a conviction would no longer qualify after five years. As the 6th Circuit- It's 922G8, is that what you referenced? I was referencing 921A33C, which defines what constitutes a misdemeanor crime of domestic violence for purposes of 922G9. But Gail's recognized also that under 921A33B2, not every case is going to be an indefinite disarmament because there are options like restoring civil rights, like expungement, pardoning, things like that. And in fact, in this case, had Mr. Jackson taken the opportunity that Kansas law provided him, section 21-6614A1 provided a path to seek expungement after a certain period of  Putting a requirement that a defendant seek to take himself out of the class of people who the legislature has disarmed is perfectly consistent, for example, with the loyalists. In fact, the loyalists had to do something more than just seek some discretionary relief. They had to essentially commit high treason against who they believed their king was and sign an oath of loyalty to a new country in order to have their firearm rights restored. And so the fact that there is an indefinite disarmament until somebody takes a step to relieve themselves of that disarmament is simply within the historic traditions of this country. And we should understand your position, as you just articulated, as responsive to this being a facial challenge, right? Correct. So let's assume that we conclude there is also an as-applied challenge here. What is the government's response to that? Is it confined to the specific characteristics of Mr. Jackson's particular conviction here, which is based on this 14-year-old misdemeanor and so forth, right? So if I can expand slightly on that. First of all, I would start by saying, specifically raising the district court error and not addressing an as-applied challenge would be forfeited. And this would be the first time for me to be able to respond. So I would say... Did you take the position in your briefing in our court that your friend on the other side has forfeited the as-applied argument? It seemed to me that the government argued this also as-applied. We took the position in our brief that this was purely a facial challenge. We noted that if there was an as-applied challenge, there were things that would counsel in favor of it. But this would be just like in Rahimi, the Supreme Court said, this is a facial challenge. But it still looked in addressing the facial challenge to 922G8 to the specific facts to support its conclusion that Section 922G8 was facially constitutional. So I think to be more directly responsive to your question, there is a, I think, split in authority amongst the circuits about would the court be restricted just to the underlying conduct in this case of the misdemeanor crime of domestic violence, which, perhaps while not involving a weapon, did involve grabbing the domestic partner's throat, causing a laceration, which, Justice Thomas explained in his Savoy Scene dissent, would be something that would fall within the Second Amendment. So let me tell you how I'm understanding the specific application, and tell me if the government agrees. So this would be reviewing 922G9 as applied to those permanently disarmed, whose predicate misdemeanors did not involve firearms, and whose predicate convictions are over 10 years. So those are the relevant as applied facts. Is that fair? Well, I would limit it one to 14 years. I would not say indefinitely, because while it might be indefinitely, there are ways that it could be undone. I would also point out, and there have been courts that have said, we can look past just the underlying conviction. So if we are talking about an as applied challenge, especially on plain error review, as Judge Murphy pointed out, I would also be looking at the fact that, even as recently as what gave rise to the arrest in this case, as recently, I believe it was December 30th, 2021, Mr. Jackson was using firearms to shoot at a vehicle, leaving multiple bullet holes, including, I believe, at least one on the driver's side windshield. So there are additional facts beyond just the facts related to the Kansas misdemeanor crime. But that was not presented to the district court in that fashion, was it? I think you're getting into the dangerous people area. Well, Your Honor, to the extent that we're talking about an as applied challenge, especially this court addressing an as applied challenge right now, this court would have all of the facts that were in the PSR before it. To the extent that we're just talking about the district court's order, the district court explained that it was limiting itself to a facial challenge. So if we're talking about an as applied challenge, we're not talking about the district court's order at this point. Say more. I'm not sure I'm following you. So my understanding of Judge Kelly's question was, was the district court presented with these things? Did the district court address these things? He asked that in response to the question, Judge Rossman, that you asked me about an as applied challenge. So my response to Judge Kelly is that, to the extent we're talking about an as applied challenge, the district court was not addressing an as applied challenge. I understand this court may wish to do that. And if it does, it has the entire factual record before it. And so that factual record includes the Kansas misdemeanor crime, the Oklahoma misdemeanor crime, and the events that led to the arrest and conviction of this case. Did the government take the position in its briefing here that Mr. Jackson was on plain error review to the extent he was raising an as applied challenge? No, Your Honor, because our position has been all along that this is a facial challenge. And your position is that that's how he has been arguing it? Correct. So you wouldn't have made the argument? Correct, because whenever I was writing this brief, I was basing my argument, one on his brief, and also on the district court's order, which very clearly laid out at least twice that this was solely a facial challenge. I see that my time has expired. Thank you, counsel. Thank you. Mr. Autry, you have two minutes and change. Thank you, Your Honor. I'll try not to use that. Let me take some of your change. If this court sent it back for an as applied analysis, what would happen? Would there be new evidence put on? I think that's a possibility if the court were to send it back to have the district court look to see whether an as applied challenge had any merit. I think at that point, in the context of a hearing, you could supplement or augment the record with new evidence. I believe that we could do that, or the government, I guess, could do that. But the new evidence could not contradict the underlying elements of the crime to which he was found guilty. I think that's correct, Your Honor, yes. So all we have is the misdemeanor in 2008 and the allegations of the shooting in the December 2021 crime. Your Honor, based on what we discussed earlier, I don't think it's relevant. What he did with the drive-by shooting case, I don't think is relevant because the predicate. You're talking about the road rage case? The road rage case, yes. He pled guilty to possessing a firearm because he had a prior misdemeanor conviction. And the firearms that were possessed were related to the road rage case. But as far as the temporal prism, I hate to use that word again, against which this should be measured, it has to do with whether the prior misdemeanor conviction disqualifies him. And I think also, if nothing else. And those facts are set because there was a conviction? Yes, Your Honor. So those could not be challenged? I believe that's correct, yes, sir. Thank you. I see my time's up. Thank you very much. Thank you, counsel. Thank you.